Jeffrey A. Carr (JC-1103)
PEPPER HAMILTON LLP
(A Pennsylvania Limited Liability Partnership)
300 Alexander Park
CN 5276
Princeton, NJ  08543-5276
(609) 452-0808

*Attorneys for Defendants,*
*Preferred Construction Advisors,*
*Preferred Real Estate Investments,*
*Preferred Real Estate Advisors*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY (TRENTON VICINAGE)**

| | |
|---|---|
| MERCER WRECKING RECYCLING CORPORATION, | : |
| | : |
| Plaintiff, | : |
| vs. | : |
| | : CIVIL ACTION |
| PREFERRED CONSTRUCTION ADVISORS, PREFERRED REAL ESTATE ADVISORS, PREFERRED REAL ESTATE INVESTMENTS and JOHN DOES A, B, and C, | : |
| | : 03 CV 4397 (AET) |
| | : |
| Defendants. | : |

**PREFERRED CONSTRUCTION ADVISORS, PREFERRED REAL ESTATE ADVISORS, AND PREFERRED REAL ESTATE INVESTMENTS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants Preferred Construction Advisors ("PCA"), Preferred Real Estate Advisors ("PREA"), and Preferred Real Estate Investments ("PREI"), by and through their undersigned attorneys, submit this Statement of Undisputed Material Facts in support of their Motion for Partial Summary Judgment, as follows:

1. This action arises out of the renovation of the PECO Generator Station in Chester, Pennsylvania (the "Project"). (Traynor Decl. ¶6, attached to Subak Decl. as Exh. A)

-1-

2.  As part of the Project, PCA was responsible for the conversion of a vacant, environmentally contaminated, one hundred year old power generating facility into more than 300,000 square feet of Class A office space. (Traynor Decl. ¶6)

3.  Because of the massive contamination of the facility caused by decades of producing electricity, the Project required environmental abatement before the renovation activities could begin. (Id. at ¶8)

4.  On or about January 13, 2001, PCA issued a request for proposals seeking bids for the performance of environmental clean-up, asbestos abatement, and demolition for the Project. (Id. at ¶9; Complaint at Count One ¶1, attached to Subak Decl. as Exh. B)

5.  PCA received bids from several potential contractors to perform the work for the Project, including Plaintiff Mercer Wrecking Recycling Corporation. (Traynor Decl. ¶10; Complaint at Count One ¶3)

6.  After reviewing proposals, PCA sent a letter to Mercer on July 26, 2001 indicating PCA's intent to enter into a contract with Mercer for the work on the Project ("Letter of Intent"). (Traynor Decl. ¶11; Complaint at Count One ¶6)

7.  The Letter of Intent provided that no contract would be binding until each party completed a final review of and accepted all contract documents. In pertinent part, the Letter of Intent provided as follows:

> Please accept this letter as our intent to enter into a mutually agreed upon contract for the abatement, environmental clean up, and demolition of the PECO Generator Station in Chester, Pennsylvania. . . .**Until final review and acceptance of all

> <u>contract documents, Mercer agrees to perform work as per this letter on a per quantum basis.</u>

(Letter of Intent of 7/26/01, attached to Subak Decl. as Exh. C)

8. On August 28, 2001, PCA sent Mercer a draft of a proposed agreement, which was to be negotiated while Mercer was working on a per quantum basis. (Letter from Subak to Mazza of 8/28/01, attached to Subak Decl. as Exh. D)

9. The draft agreement sent on August 28, 2001 contained signature lines for both PCA and Mercer, and the paragraph immediately above the signature lines stated:

> This Agreement is entered into as of the day and year first written above and is <u>executed</u> in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract and the remainder to the Owner.

(<u>Id.</u>) (emphasis added)

10. The same signature lines and provision regarding execution were included in each and every proposed agreement exchanged between PCA and Mercer, including the alleged contract that Mercer now seeks to enforce. (Complaint at Attachment A)

11. Mercer refused to perform any work (even on a per quantum basis) until a contract was executed by PCA and Mercer. (Traynor Decl. ¶12)

12. On September 4, 2001, Richard Hunt, counsel for Mercer, expressly demanded execution of a final contract or a lump sum payment in the amount of $520,000 as a precondition to Mercer performing any work on the Project:

> Please be advised that this office represents Mercer Wrecking. I have your draft AIA Document 101 Agreement and am currently reviewing same. . . . <u>Further, please be advised that my client</u>

>    <u>requires an initial payment in the amount of $520,000.00 at the time of mobilization and/or execution of the contract, whichever comes first, as consideration for their proceeding on an interim basis.</u>

(Letter from Hunt to Subak of 9/4/01, attached to Subak Decl. as Exh. E)  (emphasis added)

13. PCA never paid the $520,000 demanded by Mercer.  (Traynor Decl. ¶13)

14. Despite Mercer's injection of a new term (the $520,000 payment) into the July 26, 2001 Letter of Intent, the parties continued their efforts to finalize and execute an agreement.  (<u>Id.</u> at 14; Complaint at Count One ¶9)

15. Several proposed drafts were exchanged, and counsel repeatedly confirmed the parties' intent to require a final review and execution of any proposed agreement before it would become binding.  (Traynor Decl. ¶15; Letter from Subak to Hunt of 9/16/01, attached to Subak Decl. as Exh. F; Facsimile from Hunt to Subak of 9/21/01, attached to Subak Decl. as Exh. G; Attachment to e-mail from Sclar to Subak of 9/26/01, attached to Subak Decl. as Exh. H; E-mail from Subak to Sclar of 9/27/01, attached to Subak Decl. as Exh. I)

16. On September 28, 2001, counsel for PCA sent a proposed agreement to Mercer's attorneys for Mercer's review and signature ("the September 28 draft").  (Letter from Subak to Hunt of 9/28/01, attached to Subak Decl. as Exh. J; PCA Answer at Count One, ¶11, attached to Subak Decl. as Exh. K; Complaint at Count One ¶11)

17. The pace of the negotiations posed problems for PCA insomuch as PCA was under strict time deadlines to commence construction and Mercer was refusing to perform any of the asbestos abatement work without an executed contract or a lump sum payment. (Traynor Decl. ¶17; Letter from Hunt to Subak of 9/4/01)

18. As a result of Mercer's refusal to perform work on a per quantum basis and the parties' inability to execute a contract, on October 2, 2001, PCA informed Mercer that PCA was terminating the negotiations and that it would not execute the September 28 draft or any other agreement. (Complaint at Count One ¶ 12; Letter from Subak to Hunt of 10/3/01, attached to Subak Decl. as Exh. L; Letter from Hunt to Traynor of 10/3/01, attached to Subak Decl. as Exh. M)

19. On October 3, 2001, PCA faxed a letter to Mercer confirming that negotiations were terminated. (Letter from Subak to Hunt of 10/3/01)

20. At the time PCA terminated negotiations, Mercer had not completed its review of or signed the September 28 draft. (Complaint at Count One ¶ 12; Letter from Hunt to Traynor of 10/3/01)

21. When the negotiations were terminated, Mercer confirmed that the agreement had not been fully reviewed or executed. (Letter from Hunt to Traynor of 10/3/01)

22. In an October 3, 2001 letter, counsel for Mercer stated, in relevant part: "The Agreement provided by your attorney is currently under review by my client [Mercer], which review will be concluded tomorrow, at which time we will immediately contact you." (Letter from Hunt to Traynor of 10/3/01)

23. Subsequently, Mercer signed the September 28 draft and sent it to PCA for countersignature. (Letter from Hunt to Subak of 10/4/01, attached to Subak Decl. as Exh. N; Complaint at Count One ¶13)

24.   PCA refused to sign the September 28 draft, and PCA returned the unsigned September 28 draft to Mercer.  (Letter from Subak to Hunt of 10/4/01, attached to Subak Decl. as Exh. O; Complaint at Count One ¶14; Traynor Decl. ¶20).

Respectfully submitted,

/s/ Jeffrey A. Carr
Jeffrey A. Carr (JC-1103)
Pepper Hamilton LLP
(A Pennsylvania Limited Liability Partnership)
300 Alexander Park
CN 5276
Princeton, NJ 08543-5276
(609) 452-0808

*Attorneys for Defendants,*
*Preferred Construction Advisors,*
*Preferred Real Estate Investments,*
*Preferred Real Estate Advisors*

Dated:  May 14, 2004